## ACTION BY A MINORITY STOCKHOLDER.

Circuit Court of Cuyahoga County.

HARRY KOBLITZ v. THE BROOKSIDE BRICK COMPANY ET AL.

Decided, May 10, 1912.

*Corporations—Stockholder Suing for Company—Demand and Refusal of Officers to Bring Suit—Good Faith of Officers.*

1. Although generally a stockholder can not bring an action in his own name but for the benefit of the corporation, upon a cause of action existing in favor of the corporation, without alleging and proving demand upon the corporation, or its proper officers to bring the action, and refusal on their part to act, yet where the demand would have to be made upon those who are charged with having committed the wrongs which it is sought to redress and against whom the action would have to be brought, and, under the circumstances, would be a vain thing, its necessity is dispensed with.

2. The highest good faith on the part of an officer and director of a corporation does not require him to finance the company out of his own resources so as to enable it to take advantage of a favorable option.

*Harry Koblitz* and *Wing, Myler & Turncy*, for plaintiff.
*W. W. Hole, F. C. Scott* and *Martin W. Sanders,* contra.

NIMAN, J.; POLLOCK, J., and DUSTIN, J. (sitting in places of Judges Winch and Marvin), concur.

The plaintiff in this action is a minority stockholder in the defendant, the Brookside Brick Company, a corporation organized under the laws of Ohio. He brings this action on behalf of himself, and all other stockholders of said company similarly situated, to correct certain alleged abuses in the management of the corporation claimed to have been committed by the majority stockholders in the control of the board of directors, and to secure redress for the corporation on account thereof.

Stated briefly, the facts established by the evidence are as follows:

In 1905 the Brookside Brick Company, a West Virginia corporation, and the predecessor of the defendant, the Brookside Brick Company of Ohio, was the owner of a brick plant near Brookside Park, in the city of Cleveland. Its supply of clay for the making of brick was nearly exhausted and its financial resources were limited.

On September 11, 1905, a regularly called special meeting of the stockholders was held, the minutes of which show that a majority of the issued and outstanding capital stock was represented, and that the following motion was unanimously adopted:

"Moved and seconded that the proposition made by Mr. Louis Koblitz to the B. B. Co., which is as follows, be accepted: Said Louis Koblitz to buy 290 shares treasury stock of said B. B. Co., said Louis Koblitz is to buy the 10¾ acres, more or less, south of and adjoining the plant of the B. B. Co., being the same land upon which H. Spitz, manager of the B. B. Co. received an option from L. M. Plummer, Pittsburgh, Pa., and for which the said H. Spitz agreed to pay $700 per acre. The aforesaid Louis Koblitz to sell to the B. B. Co., on royalty of ten cents per thousand brick the clay from said land. Said clay to be used for the manufacture of brick. Said royalty to be based on brick sold, delivered and accepted; and the said Louis Koblitz is to give the B. B. Co. the right to take clay from said land for the period of one year, with the privilege of extending said right to take clay at the same price, ten cents per M. brick, for one year longer; and the said Louis Koblitz is to give the said B. B. Co. the right to purchase said land at the same price be paid for same within the time the said B. B. Co. has the right to take clay from said land on royalty."

The Louis Koblitz mentioned in this section is the Koblitz who is one of the defendants in this action. The capital stock of the West Virginia corporation was 1,000 shares of the par value of $50 per share. The 290 shares of treasury stock sold to Louis Koblitz under the terms of the foregoing motion were sold at $20 per share, making a total price of $5,800.

After this motion was adopted, Louis Koblitz took his stock and paid $5,800 for it as stipulated; he also bought the 10¾ acres of clay land and the company proceeded to take clay there-

from for the manufacture of brick, and paid the royalties provided therefor.

At about the time Louis Koblitz acquired this stock, or a short time before, he also acquired 220 shares from Herman Spitz, giving him 510 shares in all out of a capitalization of 1,000 shares, and vesting him with the power of control in the corporation. He was at once elected to the board of directors and was chosen treasurer of the corporation, and he, and those who may be presumed to be under his control and influence, have been in control ever since.

In May, 1906, the West Virginia corporation was dissolved and the defendant, the Brookside Brick Company, was organized under the laws of Ohio, with the same capital stock. The property and rights of the old company were turned over to the new company, and the liabilities of the old were assumed by the new. Stock in the West Virginia company was exchanged for a like amount in the Ohio company.

The money paid by Louis Koblitz for his treasury stock was paid to the bank to apply on an indebtedness of the company amounting to $15,200.

The option provided for in the proceedings of the stockholders' meeting of September 11, 1905, covering the 10¾ acres of land, was not exercised by the company, and on October 15, 1907, after the two years provided in the option had expired, a stockholders' meeting was held at which 614 shares were represented. The following resolution was adopted at this meeting:

"WHEREAS, The Brookside Brick Company, holders of an option on a certain tract of land about 10¾ acres adjoining the Brookside Brick Company plant, and known as the Plummer property, from which they have been using clay on a royalty, said option dated September 11, 1905, and expired September 11, 1907; and

"WHEREAS, The Brookside Brick Company being unable to take advantage of said option, instruct the secretary to notify the owner of said tract of land upon which option was held, in writing, of their inability to accept or take advantage of said option."

It appears that at no time during the two years covered by the option was there any money on hand to take advantage of it.  September, 1906, a destructive fire occurred which made necessary the rebuilding of a part of the company's plant at an expense of several thousand dollars.  In the early part of 1907, the company owed the United Banking Company $11,000, which was secured by mortgage on the company's plant as well as by a mortgage given the bank by Louis Koblitz on the 10¾ acres covered by the option.  The company was also indebted to Louis Koblitz in the sum of $13,000 which he had loaned it on a second mortgage.

At the same stockholders' meeting at which it was voted to notify Louis Koblitz that the company could not take advantage of the option a resolution was adopted authorizing the making with the owner of the 10¾ acres of a royalty contract for clay, on the basis of twenty-five cents per thousand brick manufactured, sold and delivered, and on the 16th day of December, 1907, such a royalty agreement was made between the company and the defendant, Joseph Koblitz, in whose name the property then stood.  The royalties paid under this agreement and extensions thereof on the twenty-five cents per thousand basis, amounted to something over $11,000.

The company continued in business until February 17, 1912, when its board of directors made an assignment of all its property to the defendant, Lawrence Koblitz, for the benefit of creditors.

Thereafter, the plaintiff in this action filed a motion in the insolvency court to remove the assignee upon grounds similar to the grounds set forth in his petition in support of the relief prayed for by him.  This motion on hearing in the insolvency court was overruled.

The plaintiff, by this action, seeks to have the deed of assignment declared null and void and set aside, and a receiver appointed; to have an accounting between the Brookside Brick Company and the other defendants as to the moneys received by such defendants from the company; and to have such relief decreed as will result in a suspension of the two years time

limitation in the option contract so that the company, freed from the alleged antagonistic influences of the defendant Louis Koblitz, may have an opportunity to take advantage of said option.

Some technical objections have been interposed against the right of the plaintiff to maintain this action.

It is urged by the defendants that the questions involved in this action have been adjudicated by the decision of the insolvency court on the motion to remove the assignee, but in our opinion the issues before us are much broader than the issue raised by the motion, and while the motion might be supported or opposed in part by the same evidence that would support or oppose the averments of the petition, yet the matters in issue in the two hearings are entirely different.

It is also contended by the defendants that the plaintiff can not maintain his action as a stockholder without first making demand upon the proper officers of the corporation, or the assignee, to start suit to redress the grievances complained of, and showing a refusal to comply with such demand.

It is the rule generally that a stockholder has no right to bring an action in his own name upon a cause of action existing in favor of the corporation, and in which the corporation is the proper plaintiff, unless the corporation has refused to prosecute the action, and it is therefore necessary for a stockholder who institutes such an action to aver and prove a demand upon the corporation, or its proper officers, to start the action, and a refusal to act. Where the demand, however, would have to be made upon those who are charged with having committed the wrongs which it is sought to redress, and against whom the action would have to be brought, and where a demand under the circumstances would be a vain thing, its necessity is dispensed with. In this case we think the averments of the petition are such as to show a right in the plaintiff to institute the action without having first made a demand upon the officers or assignee.

Coming to the decision of the case, then, upon its merits, we think the entire controversy depends upon the disposition to be

made of the plaintiff's contention that the company's rights under the option should not be concluded merely because the two years have passed, but that it should be placed in such a position as that, freed from the control of Louis Koblitz, it may have an opportunity to still avail itself of said option.

Without this 10¾ acres of land, the company is hopelessly insolvent, and the deed of assignment should stand. If the right to acquire this supply of clay by taking advantage of the option still belongs to the company, the value of its assets will be much greater, and if the value of this land is as great as it is asserted to be, the company would not be insolvent.

It is claimed that Louis Koblitz, being in absolute control of the company through the ownership of a majority of its stock, caused its affairs to be so managed that the company refrained from acquiring the supply of clay necessary for its further existence, and intentionally allowed the option to expire, so that he might cause the company to fail, and the intimation is that he acted with a view of ultimately acquiring the plant after the failure of the company at a small portion of its value, and using it in connection with his valuable supply of clay. It is urged that his failure to have the company exercise the option has operated as a fraud on the corporation and on other stockholders.

It is said in *Thompson on Corporations*, Vol. 2, Section 1216:

"A director occupies a position of trust or agency for his corporation of such a character that dealings between him and it, where his interest is opposed to that of the corporation, will be subject to close scrutiny and will not be sustained as against the stockholders, unless consistent with good faith and fair dealings on his part."

Giving the conduct of Louis Koblitz in connection with this option that close scrutiny required by the law, we are compelled to reach the conclusion that his dealings with the company are entirely consistent with good faith and fair dealings on his part.

At the time he was induced to become a stockholder and invest his money, the company was in poor financial condition. It

received much financial assistance from him from time to time. In fact, it appears from the evidence, that whenever the company was in need of money, he was the one to whom appeal was made. He mortgaged the 10¾ acres of land in question and otherwise pledged his credit for the benefit of the company. At no time during the two years provided for in the option did the company have the means at hand to acquire the land, unless the money should be advanced or in some way secured by Koblitz himself. The rule of highest good faith could hardly require him to finance the company out of his own resources to enable it to take advantage of the option. Complaint is made that money was expended in rebuilding the plant after the fire that might have been used to acquire the land, but the money so used was borrowed for that purpose, and we fail to see how any implication of bad faith is suggested by the act of the company, under the control of Koblitz, in borrowing money for one purpose and not borrowing it for another.

All of the important transactions complained of here were considered and authorized at stockholders' meetings, at which a majority of the stock was represented. The option expired September 11, 1907, and the meeting at which it was resolved to notify the owner of the land of the company's inability to accept said option, was held October 15, 1907. For more than four years after this the company continued in business, and was supported financially by Louis Koblitz until the assignment was made. We are unable to see how more could be required of him as a matter of right and law.

The transaction with respect to the making of the new royalty contract with Joseph Koblitz on the basis of twenty-five cents per thousand brick, does not seem to have been unfair. The price was the usual price for clay. The company has used the clay paid for by it and has had the benefit of it. There is nothing in this transaction to call for an accounting.

In view of the conclusions reached by us on the facts as indicated, the relief sought by the plaintiff and the various cross-petitioners will be denied, and the petition and cross-petition dismissed.